## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**MOONGATE WATER CO., INC.,**
**A New Mexico Public Utility,**

      **Plaintiff,**

vs.                                            **No. CIV 02-1615 RB/LCS**

**DOÑA ANA MUTUAL DOMESTIC**
**WATER CONSUMERS ASSOCIATION,**

      **Defendant.**

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendant's (Doña Ana's) Motion for Summary Judgment (Doc. 67), filed on March 17, 2004; Plaintiff's (Moongate's) Motion for Summary Judgment (Doc. 69), filed on April 2, 2004; and Moongate's Motion to Strike Affidavits of Mariano Martinez and Adrienne Widmer (Doc. 85), filed May 14, 2004. Jurisdiction is founded upon 28 U.S.C § 1331. Having reviewed the submissions of the parties and the relevant law, the Court finds that Doña Ana failed to make service available within the disputed area before Moongate started serving the area and accordingly grants Moongate's Motion for Summary Judgment. Moongate's Motion to Strike and Doña Ana's Motion for Summary Judgment are denied.

**I.    Background.**

Moongate seeks a declaratory judgment that Doña Ana is not entitled to the protection of 7 U.S.C. § 1926(b), with respect to an area northeast of Las Cruces that lies to the east of Interstate 25 and north of U.S. Highway 70. The disputed area is identified on a map designated by the parties as Exhibit 38.

In a letter dated November 8, 2002, Doña Ana informed Moongate that it intended to serve the disputed area. (Compl. ¶ 20; Pl. Ex. B.) However, Doña Ana does not claim §1926(b) protection to any customer currently provided water service by Moongate, to any customer who was requesting water service from Moongate at the time Moongate filed this action, or to any customer currently requesting service from Moongate. (Def. Ex. 1 ¶ 6.)

Moongate requests a declaratory judgment that the provisions of 7 U.S.C. § 1926(b) do not apply to Doña Ana regarding service by Moongate to persons either on the Moongate system or in the area of the Moongate system. (Compl. ¶ 5.) Doña Ana counterclaimed that it is entitled to the statutory protections and sought damages under 42 U.S.C. § 1983. (Countercl.) On February 5, 2004, I granted Moongate's motion for judgment on the pleadings as to Doña Ana's §1983 claim, and denied Doña Ana's motion to dismiss for lack of case or controversy.

On March 17, 2004, Doña Ana moved for summary judgment, arguing as follows: (1) it has the legal right to serve the disputed area; (2) it has made service available within the disputed area; (3) Moongate must prove that Doña Ana did not serve the area by clear and convincing evidence; (4) §1926(b) protection applies only with respect to customers and not to areas, and that because there are no customers in dispute, Doña Ana is entitled to §1926(b) protection for the disputed area; and (5) Moongate's affirmative defenses are inapplicable.

On April 2, 2004, Moongate moved for summary judgment, arguing as follows: (1) Doña Ana did not have the physical ability to serve the disputed area before Moongate began providing service; and (2) Doña Ana is not entitled to §1926(b) protection. Also pending is Moongate's motion to strike the affidavits of Mariano Martinez and Adrienne Widmer.

**II.     Facts.**

The following statement of facts is set forth in the light most favorable to Doña Ana, with all reasonable inferences from the record drawn in its favor. *See Clanton v. Cooper*, 129 F.3d 1147, 1150 (10th Cir. 1997). The record reflects an absence of evidence to support Doña Ana's claim that it is entitled to §1926(b) protection. Doña Ana has failed to submit evidence demonstrating a genuine issue for trial on a material matter.

Moongate is an investor-owned public utility organized under the New Mexico Public Utilities Act, NMSA, §§ 62-1-1 *et seq.*, and regulated as a public utility by the New Mexico Public Regulatory Commission (NMPRC). (Pl.'s Ex. 11 ¶¶ 2; 3.) Doña Ana is a non-profit association formed in accordance with New Mexico law for the purpose of providing water service. (Def. Ex. 1 ¶ 2; Def. Ex. 2.)

In a 1978 master plan and twenty year study, Doña Ana identified its eastern boundary as Interstate 25 (I-25). (Pl. Ex. 3.) In a letter dated October 25, 1982, Frank Carpenter, who was at that time the president of Doña Ana, stated that Doña Ana's service area did not include the area east of I-25. (Pl. Ex. 5.) In 1983, Mr. Carpenter stated at Doña Ana board meetings that I-25 was the eastern boundary of Doña Ana's service area. (Pl. Ex. 1 at Dep. Exs. 1 and 6.) Also in 1983, the vice president of Doña Ana stated at a board meeting that I-25 was the eastern boundary of the service area. (Pl. Ex. 2.) On February 8, 1983, the membership of Doña Ana determined that it would be unwise to extend the service area east of I-25 considering the amount of water rights it had, the cost of serving the area, and unknown problems that could arise due to a pending lawsuit. (Pl. Ex. 7.) At a March 8, 1983 board meeting, Doña Ana reiterated that it had no plans to extend service east of I-25 "for the foreseeable future." (Pl. Ex. 8.) On September 11, 1984, Doña Ana informed

land owner Donald Weise that it was not serving users east of I-25, and would not do so in the near future. (Pl. Ex. 9.)

Former Doña Ana County Commissioner Peter Cooper testified in a deposition taken for this matter that, in 1983, residents of the disputed area came to him in a state of desperation, asking for his assistance in obtaining water service for their homes. (Pl. Ex. 10 at 8.) Because they had no water service, the residents were hauling water for domestic use. (*Id*.; Pl. Ex. C ¶ 1.) Mr. Cooper contacted Doña Ana and requested that it provide water service to the residents, but Doña Ana refused to provide service. (Pl. Exs. C ¶¶ 2-3, 5, and 8.)

During the same time period, Doña Ana had an application for a special use permit pending to install a larger water storage tank to the east of I-25, near Del Rey Boulevard.[1] (Pl. Ex. 10 at 9.) Home owners in the disputed area had challenged the application on the grounds that, although the tank was within 1,800 feet of their homes, Doña Ana had refused to provide water service to them. (Pl. Ex. 8.) When the matter came before the county commission, Mr. Cooper asked Mr. Carpenter whether Doña Ana would serve the residents in the disputed area who were without water. (Pl. Ex. 10 at 9-10.) Mr. Carpenter responded that Doña Ana had decided not to serve anyone to the east of I-25. (Pl. Ex. 10 at 10.)

Mr. Cooper asked the county legal department to determine whether the county could impose a restriction on the special use permit that would require Doña Ana to serve the residents who were without water. (Pl. Ex. 10 at 11). The county determined that it lacked authority to force Doña Ana to serve the area east of I-25. (*Id*.) The special use permit was granted with view restrictions and the tank was installed. (*Id*.)

---

[1] Del Rey Boulevard is located just east of I-25, on the western edge of the disputed area.

After Doña Ana refused to provide service to the homes in the disputed area, Commissioner Cooper asked Louis Gariano, the president of Moongate, whether Moongate would provide water service to the residents.  (Pl. Ex. 10 at 11-12; Pl. Ex. C ¶ 5; Def. Ex. 11 at 44.)  Mr. Gariano responded that Moongate was willing to serve the area, but that installation of the required lines would require considerable investment because the existing Moongate lines were approximately five miles away.  (Pl. Exs. C; D ¶ 5.)  In October 1984, Moongate contacted residents in the disputed area to determine how many were interested in obtaining water service.  (Pl. Ex. 11 ¶ 6; Def. Ex. 17.)  In November 1984, Moongate applied for a line extension from the NMPRC to serve the disputed area.  (Pl. Ex. 11 ¶ 7; Pl. Ex. D ¶¶ 7-8.)  In January 1985, Moongate received written approval from the NMPRC for construction of a line extension to the disputed area.  (Pl. Ex. 11 ¶ 7.)

Jeffrey Gariano, a corporate officer of Moongate, was personally involved in constructing the extension.  (Pl. Ex. 11 ¶ 8.)  Before constructing the line, Moongate contacted Doña Ana to obtain the locations of Doña Ana's facilities to avoid damage to them.  (Pl. Ex. 11 ¶ 9; Def. Ex. 11 at 44-45.)  A Doña Ana board member and a maintenance man came out to the work site and told Jeffrey Gariano that Doña Ana had a ten inch line and a hydrant in the area of Del Rey, but that they were not sure where the line was located because the county had moved the road.  (Pl. Ex. 11 ¶¶ 10-11.)  The representatives of Doña Ana also told Jeffrey Gariano that the line did not have enough pressure to serve the area.  (Pl. Ex. 11 ¶¶ 12.)  In March 1985, Moongate completed construction of the water lines and began providing water service to about 130 customers within the disputed area.  (Pl.'s Ex. 11 ¶¶ 14-15; Maps B and C; Def. Ex. 11 at 51.)  In 1987 and 1988, Moongate purchased and assumed management of the Apollo Estates water system within the disputed area.  (Pl. Ex. 11 ¶ 17.)

In January 1997, Doña Ana denied a request for service from Southwest Disposal, a business

located on Del Rey Boulevard, because the property was outside its service area. (Pl. Ex. 13, Depo. Ex. 21.) After Doña Ana refused to provide service to Southwest Disposal, Moongate began serving Southwest Disposal and other customers within the disputed area. (Pl. Ex. 11 ¶ 18-19, Map D.) As of April 2004, Moongate was serving almost 1000 individual meters within the disputed area. (Pl.'s Ex. 11 ¶ 21.)

Oscar Butler, the current president of Doña Ana, testified that Doña Ana has intended to serve the area east of I-25 since at least 1996. (Pl. Ex. 1 at 12; 14.) At a January 27, 1999 meeting, Mr. Butler stated that it was his understanding when he came on the board in 1996, the eastern boundary of the service area was I-25. (Pl. Ex. 17 at 24.) In a 1999 loan application, Doña Ana identified its eastern boundary as I-25. (Pl. Ex. 1 at 29; Pl. Ex. 14.) In 2002, Doña Ana entered into a purchase agreement with the former owners of Apollo Estates water system that obligated it to perfect water rights east of I-25. (Pl. Ex. 1 at 17-18; 20.)

Mariano Martinez, manager of Doña Ana, testified that Doña Ana has a ten-inch main on Del Rey Boulevard and a hydrant. (Pl. Ex. 13 at 42; Pl. Ex. G at 103.) Doña Ana began serving C.I. LLC, R.V. Storage Unit, located at 5500 Del Rey, in August 2003. (Pl. Ex. 13 at 42; Pl Ex. H at 42.) The RV storage unit is across the street from Southwest Disposal. (*Id*.) Prior to connecting the RV storage unit, Doña Ana had no water service customers east of I-25. (Pl. Ex. 13 at 61, 103; Pl. Ex. G at 61.)

James G. White, P.E., served as an engineer for Doña Ana from 1975 to 1991. (Pl. Ex. 12 at 9.) In all communications that he had with the board, it was always his recommendation that no service was feasible east of I-25. (Pl. Ex. 12 at 16.) During all of the Doña Ana board meetings that Mr. White attended in the 1970s and 1980s, the board never expressed an intent to change the service

area to include the area east of I-25. (*Id.*)

Mr. White testified that the Doña Ana system was designed to operate with a ground-storage tank at an particular elevation, with production wells scattered throughout the system. (Pl. Ex. 12 at 10.) The water pressure in the system derives from the ground-storage tank, and the wells are controlled by the water level in the tank. (*Id.*)

Mr. White testified that Doña Ana has a water tank directly east of the Doña Ana interchange on I-25. (Pl. Ex. 12 at 9.) The elevation of the tank is 4,050', and the tank is forty feet high, for a high water level of 4,090'. (Pl. Ex. 12 at 11-12.) The tank was designed to serve Doña Ana's service area, which included the area west of I-25 and adjacent to the interstate. (Pl. Ex. 12 at 12.) The tank was designed to supply appropriate water pressure to elevations of 4,000 and lower. (Pl. Ex. 12 at 14.)

Mr. White testified that Doña Ana has a second storage tank located to the south of the first tank. (Pl. Ex. 12 at 25.) The second tank is at the same elevation as the first tank and can supply appropriate pressure to elevations of 4,000 feet and lower. (Pl. Ex. 12 at 28.) The second tank was designed to serve areas west of I-25, and to provide additional flow capacity to the southern part of the Doña Ana system. (*Id.*) The second tank provides additional storage and is designed to work in concert with the first tank. (*Id.*)

Mr. White was present at a board meeting where there was discussion of Doña Ana's proposal to extend service to the east side of I-25. (Pl. Ex. 12 at 29.) Mr. White reiterated his recommendation that Doña Ana not serve the general area east of I-25. (*Id.*) The board concurred that Doña Ana should not provide service east of the interstate. (Pl. Ex. 12 at 30.)

Adrienne Widmer, P.E., an engineer retained by Doña Ana, wrote in a report, dated July 2,

2003, that "generally speaking, Doña Ana can provide service to the east side of I-25." (Def. Ex. 8.) In a separate affidavit, Ms. Widmer stated that "generally speaking, Doña Ana could have provided water service to the east side of I-25 in 1985." (Def. Ex. 21.) Ms. Widmer opined that, without a specific customer identified with specific water requirements for a specific location east of I-25, it is impossible to determine what the water requirements were, how Doña Ana would have served that customer, or how long it would have taken to provide water service to the customer. (Def. Ex. 21, ¶ 5.)

In his affidavit, Mariano Martinez stated that, at the time Moongate extended its lines into the disputed area, Doña Ana's facilities were available and capable of providing service to the area within a reasonable time. (Def. Ex. 19.) Martinez believed that Doña Ana could generally provide water service to the area, but that specific information was required to determine what extensions or improvements would have been necessary. (Def. Ex. 19, ¶ 8.) Jerry Lowance, P.E., testified that Doña Ana has the ability to serve a narrow strip east of I-25 without boosters. (Def. Ex. 9 at 45.)

**III.    Standard.**

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.'" *Muñoz v. St. Mary Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000) (quoting Rule 56(c)). When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party. *Id.*

8

The movant bears the initial burden of establishing that no genuine issue exists as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (*quoting First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 289 (1968)). The movant's initial burden may be discharged by showing there is an absence of evidence to support the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the non-moving party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Once the movant meets its burden, the burden shifts to the non-moving party to demonstrate a genuine issue for trial on a material matter. *See McGarry v. Pitkin Co.*, 175 F.3d 1193, 1201 (10th Cir. 1999).

If the moving party satisfies its initial burden, the party opposing the motion for summary judgment may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing there is a genuine issue for trial as to a dispositive matter for which it carries the burden of proof. *See Muñoz,* 221 F.3d at 1164. It is not sufficient "to simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. An issue of material fact is genuine if a reasonable jury could return a verdict for the party opposing the motion. *See Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1129 (10th Cir. 2003). The substantive law at issue determines which facts are material in a given case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

**IV.     Analysis.**

**A.     Background on 7 U.S.C. § 1926.**

"Congress authorized the Secretary of Agriculture to make or insure loans to nonprofit water service associations for 'the conservation, development, use, and control of water.'" *Sequoyah County Rural Water Dist. No. 7 v. Town of Muldrow*, 191 F.3d 1192, 1194 (10th Cir. 1999) (quoting 7 U.S.C. § 1926(a)). Section 1926(b) provides that "[t]he service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body." 7 U.S.C. § 1926(b). Through § 1926(b), Congress intended to protect rural water districts from competition to encourage rural water development and to provide greater security for and thereby increase the likelihood of repayment of the federal loans. *See Sequoyah County*, 191 F.3d at 1196. Section 1926(b) must be broadly construed to protect rural water districts from competition with other water service providers. *Rural Water Dist. No. 1, Post Rock v. City of Wilson,* 243 F.3d 1263, 1269 (10th Cir. 2001).

In order to receive the protections of § 1926(b), a water association must (1) have a continuing indebtedness on a § 1926(a) loan, and (2) have provided or made service available to the disputed area. *Sequoyah County*, 191 F.3d at 1197. It is undisputed that Doña Ana has been a federally indebted association at all relevant times. The issue is whether Doña Ana made service available within the disputed area before Moongate started serving the area.

**B.     Whether Doña Ana has the legal right to serve the disputed area.**

Doña Ana argues that it has a legal right to serve the disputed area. In order to claim §1926(b) protection, an association must have a legal right to provide water service to an area arising

10

from state law. *See Sequoyah County*, 191 F.3d at 1201 n. 8. For the purposes of this proceeding, Moongate does not challenge Doña Ana's legal right to serve.[2] Therefore, it is assumed herein that Doña Ana has the legal right to serve the disputed area. I express no opinion on this state law issue because it is not necessary to my decision.

**C.      Whether Doña Ana is entitled to a presumption that it made service available.**

Doña Ana argues that it is entitled to a presumption that it has made service available, and that Moongate has the burden of establishing, by clear and convincing evidence, that Doña Ana has not made service available. It is true that evidentiary uncertainties must be resolved in favor of the indebted party seeking protection of its territory. *Sequoyah County*, 191 F.3d at 1197 (citing *North Alamo Water Supply Corp. v. City of San Juan,* 90 F.3d 910, 913 (5th Cir. 1996)). However, none of the authorities cited by Doña Ana stand for the proposition that a non-indebted party must prove that the §1926(b) indebted entity has not made service available by the clear and convincing evidence standard.

Under controlling Tenth Circuit authority, an association must satisfy the "made service available" prong by demonstrating that it has adequate facilities within or adjacent to an area to provide service to the area within a reasonable time after a request for service was made. *Sequoyah County*, 191 F.3d at 1203 (citing *Bell Arthur Water Corp. v. Greenville Utils. Comm'n,* 173 F.3d 517, 526 (4th Cir. 1999)). This statement suggests that the burden of proof remains with Doña Ana. *Sequoyah County*, 191 F.3d at 1203. However, Moongate seeks a declaration that Doña Ana is not entitled to the protection of §1926(b). Because Moongate is the plaintiff, I will allocate the burden

---

[2] Moongate is challenging Doña Ana's legal right to serve the disputed area before the NMPRC. (Pl.'s Resp. to Def's Mot. for Summ. J. at 15.)

of proof to Moongate.

Where a standard is not specified, the preponderance of the evidence standard applies. *See Jones ex rel. Jones v. Chater*, 101 F.3d 509, 512 (7th Cir. 1996) (preponderance is the default standard in civil proceedings). Evidentiary uncertainties must be resolved in favor of Doña Ana, and Moongate has the burden of showing that Doña Ana does not satisfy the "made service available" prong of §1926(b) by a preponderance of the evidence. *See Sequoyah County*, 191 F.3d at 1203.

### D.    Whether §1926(b) applies only with respect to customers and not areas.

Doña Ana argues that §1926(b) protection applies only with respect to customers and not to areas. Doña Ana reasons that, because there are no customers in dispute, it is entitled to §1926(b) protection for the disputed area. While the logic of this reasoning is not readily apparent, the premise that §1926(b) protection applies only with respect to customers is faulty.

I discussed the fallacy of this premise in my Memorandum Opinion and Order of February 2, 2004, wherein I denied Doña Ana's motion to dismiss for lack of case or controversy. In support of its motion to dismiss, Doña Ana had argued that the applicability of § 1926(b) must be determined through reference to a particular customer and not to an area. Doña Ana based this argument on *Rural Water District No. 1, Post Rock*, *Id*., 243 F.3d at 1267-1268. In *Post Rock*, the district court concluded that an injunction concerning Prairie Estates would be premature because there was no development in the area and Post Rock had not shown it had the ability to provide services in the area. *Id*., 243 F.3d at 1272. In affirming the district court, the Tenth Circuit stated that whether Post Rock was entitled to provide exclusive water service in Prairie Estates would depend on whether Post Rock had the ability to serve that area. *Id*., 243 F.3d at 1272. Because there was no development and no water service within Prairie Estates, the question of whether Post Rock had the capacity to

serve the area could not be established until water customers moved into Prairie Estates. *Id*.

I concluded that the *Post Rock* decision was inapplicable to this case because portions of the disputed area have been developed and Moongate has been providing water service within the area since 1985. Moreover, § 1926(b) speaks in terms of "the area served" and "such area" in describing the protections it affords. 7 U.S.C. §1926. These terms suggest that the statute applies to areas as well as customers.

**E.      Whether Doña Ana is entitled to the protection of 7 U.S.C. §1926(b).**

A water association must have made service available prior to the time an allegedly encroaching entity began providing service in order to obtain § 1926(b) protection. *Sequoyah County*, 191 F.3d at 1202 (citing *Lexington-South Elkhorn Water Dist. v. City of Wilmore*, 93 F.3d 230, 237 (6th Cir. 1996)). The association must have "water lines . . . either . . . within or adjacent to the property claimed to be protected by § 1926(b) prior to the time an allegedly encroaching entity begins providing service in order to be eligible for § 1926(b) protection." *Lexington-South*, 93 F.3d at 237.

The record establishes that Moongate has provided water service to the disputed area since 1985. Doña Ana refused to provide service to the area as recently as 1997. From 1982 until sometime after 1997, Doña Ana identified the eastern boundary of its service area as I-25. (Pl. Exs. 2; 3; 5 and 6.) Although Doña Ana has storage tanks and water lines within the disputed area, these facilities were designed to serve the area west of I-25, and not the disputed area. (Pl. Ex. 12 at 12; 28; 29.) Doña Ana's system tank was designed to supply appropriate water pressure to elevations of 4,000 and lower. (Pl. Ex. 12 at 14.) Exhibits 132 and 133 demonstrate that the bulk of the disputed area lies above 4,000 feet in elevation. (Pl. Exs. 132 and 133.)

In 1983, Doña Ana refused to provide service to residents of the disputed area who were without water. (Pl. Exs. 7; C ¶¶ 2-3.) After Doña Ana refused to provide service, Moongate extended its lines to the area at considerable cost to Moongate and the residents. (Pl. Ex. D.) Doña Ana was notified of the extension and acquiesced. (Pl. Ex. 11.) In March 1985, Moongate began serving about 130 customers within the disputed area. (Pl.'s Ex. 11 ¶¶ 14-15; Maps B and C; Def. Ex. 11 at 51.) Moongate added additional customers to its system within the disputed area in 1987, 1997, and 2002. As late as January 1997, Doña Ana refused to serve properties on Del Rey because it was outside its service area. (Pl. Ex. 13, Depo. Ex. 21.) Prior to connecting the RV storage unit in August 2003, Doña Ana had no customers east of I-25. (Pl. Ex. 13 at 61; Pl. Ex. G at 61.) Doña Ana's engineering expert testified that Doña Ana has the ability to serve only a narrow strip east of I-25 without expensive equipment. (Def. Ex. 9 at 45.)

Moongate has discharged its initial burden by showing there is an absence of evidence to support Doña Ana's claim that it is entitled to §1926(b) protection. The burden has shifted to Doña Ana to demonstrate a genuine issue for trial on a material matter by setting forth specific facts showing there is a genuine issue for trial. *See McGarry*, 175 F.3d at 1201; *Muñoz,* 221 F.3d at 1164.

Doña Ana has presented evidence that it intended to serve the area east of I-25 since at least 1996. (Pl. Ex. 1 at 12; 14.) In 2002, Doña Ana entered into a purchase agreement with the former owners of Apollo Estates water system that obligated it to perfect water rights east of I-25. (Pl. Ex. 1 at 17-18; 20.) Doña Ana began serving C.I. LLC, R.V. Storage Unit, located at 5500 Del Rey, in August 2003. (Pl. Ex. 13 at 42; Pl Ex. H at 42.)

Doña Ana has offered the conclusory statements of Martinez and Widmer to the effect that Doña Ana was capable of providing service to the disputed area within a reasonable time in 1985.

14

These statements are insufficient to withstand summary judgment as a matter of law because the statements are unsupported by any factual basis. *Matthiesen v. Banc One Mortgage Corp.*, 173 F.3d 1242, 1247 (10th Cir. 1999) (holding that the testimony of an expert can be rejected on summary judgment if it is conclusory and thus fails to raise a genuine issue of material fact). Moreover, the question is not whether Doña Ana was capable of constructing service facilities and extending service into the disputed area in 1985; the question is whether it had the pipes in the ground that enabled it to make service available in 1985. *Sequoyah County*, 191 F.3d at 1203. The affidavits of Martinez and Widmer are not responsive to the dispositive issue. Because the affidavits of Martinez and Widmer do not alter the outcome of the case, Moongate's motion to strike should be denied.

Under controlling Tenth Circuit authority, an association satisfies the "made service available" component of §1926(b) by demonstrating that it has adequate facilities within or adjacent to an area to provide service to the area within a reasonable time after a request for service was made. *Sequoyah County*, 191 F.3d at 1203. The record establishes that requests for service were made in 1983. Doña Ana did not have adequate facilities to provide service to the disputed area within a reasonable time after the requests were made. Moongate has provided continuous water service to the disputed area since 1985. The undisputed evidence of record demonstrates that Doña Ana did not make service available before Moongate began providing service. Having construed the record in the light most favorable to Doña Ana, and having drawn all inferences in Doña Ana's favor, I have determined that Doña Ana has not made service available to the disputed area within the meaning of §1926(b) at any relevant time. Therefore, Doña Ana is not entitled to §1926(b) protection with respect to the disputed area.

## V.     Conclusion.

Doña Ana is not entitled to §1926(b) protection because it failed to make service available within the disputed area before Moongate started serving the area. Moongate's Motion for Summary Judgment should be granted. Moongate's Motion to Strike and Doña Ana's Motion for Summary Judgment is denied.

**WHEREFORE,**

**IT IS ORDERED** that Defendant's (Doña Ana's) Motion for Summary Judgment (Doc. 67), filed on March 17, 2004, and Moongate's Motion to Strike Affidavits of Mariano Martinez and Adrienne Widmer (Doc. 85), filed May 14, 2004, are **DENIED.**

**IT IS FURTHER ORDERED** that Moongate's Motion for Summary Judgment (Doc. 69), filed on April 2, 2004, is **GRANTED.**

**IT IS FURTHER ORDERED** that summary judgment in favor of Moongate shall issue.

**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**